IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Austin Meyer, | ) | |
| | ) | Civil Action No.: 3:19-cv-00173-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | |
| Henry McMaster, *in his official capacity as Governor*; and Alan Wilson, *in his official capacity as Attorney General*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court for review of Defendants Henry McMaster, the Governor of South Carolina, and Alan Wilson's, the Attorney General of South Carolina, (collectively, "Defendants"), Motion to Dismiss Complaint filed on March 28, 2019. (ECF No. 15.) Plaintiff Austin Meyer ("Meyer") responded in opposition to Defendants' Motion on April 11, 2019. (ECF No. 16.) On May 30, 2019, the court heard arguments from the parties regarding Defendants' Motion. (ECF No. 23.) For the reasons stated herein, the court **GRANTS** Defendants' Motion to Dismiss (ECF No. 15) and **DISMISSES WITHOUT PREJUDICE** Meyer's Complaint (ECF No. 1).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Tesla, Inc. ("Tesla") is an American company that builds "all-electric vehicles" and creates "scalable clean energy generation and storage products." *About Tesla*, TESLA, https://www.tesla.com/about (last visited May 26, 2019).[1] Tesla produces all of its vehicles in

---

[1] Under the Federal Rules of Evidence, the court is permitted to "take judicial notice on its own." FED. R. EVID. 201(c). Moreover, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial

1

Fremont, California, including the Model S, Model X, Model 3, and Tesla Semi. *Id.* The Model S is "the world's first ever premium all-electric sedan," while the Model X is a "sport utility vehicle." *Id.* The Model 3 is "a low-priced, high-volume electric vehicle," and the Tesla Semi is described, by Tesla, as being "the safest, most comfortable truck ever." *Id.* Tesla seeks to "accelerate the world's transition to sustainable energy" and "believes the faster the world stops relying on fossil fuels and moves towards a zero-emission future, the better." *Id.*

According to Meyer, Tesla engages in a "unique direct sales-and-service model[,]" which allows Tesla to "market[] and sell[] its vehicles directly to consumers over the Internet (at www.tesla.com) and through a worldwide network of stores owned and operated by Tesla." (ECF No. 1 at 8 ¶ 22.) Purportedly, "Tesla does not sell its vehicles through independent, franchised dealers, i.e., third-party dealers who sell vehicles pursuant to franchise agreements with manufacturers." (*Id.*) Because Tesla "is nothing like the traditional car-buying process," Tesla "sells its cars at uniform and transparent list prices, which depend on the configurations of and options for each car."[2] (*Id.* at 9–10 ¶ 24.) Thus, when buying an electric vehicle, "customers pay

---

jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)–(2). Based upon the pleadings, there is no dispute concerning the nature of Tesla's business or the contents of Tesla's official website. (*See* ECF Nos. 1, 15, 16, 18.) Additionally, provided that the website on which the facts are based is Tesla's official website, this is a fact that may be "accurately and readily determined" from a source "whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). *See generally Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (taking judicial notice of information "publicly announced on a party's website" because the authenticity was not in dispute, and the information was "capable of accurate and ready determination" (quoting FED. R. EVID. 201(b))). The court takes judicial notice of the website only for the purpose of describing the nature of Tesla's business. *See Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011) ("[J]udically noticed documents may be considered only for limited purposes.").

[2] Meyer suggests that independent dealers "typically rely on fast, high-volume sales at the highest negotiable price, and frequently pressure customers to purchase add-ons and services that they do not want or need." (ECF No. 1 at 9 ¶ 24.)

the same price whether they purchase through Tesla's website, at a local store, or at a store in a different state." (*Id.*) Apparently, "Tesla has determined that its direct sales model is the only viable means for selling its cars." (*Id.* at 12 ¶ 32.)

Meyer filed his Complaint on January 22, 2019, and "is the owner of two Tesla automobiles." (ECF No. 1 at 5.) Meyer brings his Complaint pursuant to 42 U.S.C. § 1983 and alleges violations of the Due Process Clause of the Fourteenth Amendment, Equal Protection Clause of the Fourteenth Amendment, and the Dormant Commerce Clause of Article I of the United States Constitution. (*Id.* at 1 ¶ 10, 16 ¶ 44, 17 ¶ 48, 18 ¶ 52.) Meyer seeks declaratory and injunctive relief from S.C. Code Ann. § 56-15-45 (West 2019).[3] (*Id.* at 19–20.) Generally, S.C. Code Ann. § 56-15-45(A) (West 2019) makes it:

> unlawful for a manufacturer or franchisor or any parent, affiliate, wholly or partially owned subsidiary, officer, or representative of a manufacturer or franchisor to own, operate, or control or to participate in the ownership, operation, or control of a new motor vehicle dealer in [South Carolina], to establish in [South Carolina] an additional dealer or dealership in which that person or entity has an interest, or to own, operate, or control, directly or indirectly, an interest in a dealer or dealership in [South Carolina], excluding a passive interest in a publicly traded corporation held for investment purposes.

However, the statute explicitly "does not prohibit the ownership, operation, or control of a new motor vehicle dealer by a manufacturer or franchisor" in three limited situations. *See* S.C. Code Ann. §§ 56-15-45(A)(1) to (3) (West 2019). Additionally, the statute provides that:

> It is unlawful for a manufacturer or franchisor or any parent, affiliate, wholly or partially owned subsidiary, officer, or representative of a manufacturer or

---

[3] Throughout his Complaint, Meyer repeatedly cites to S.C. Code Ann. § 56-15-10 (West 2019). (ECF No. 1 at 10–11 ¶¶ 29–31, 15–16 ¶ 40, 17 ¶ 49, 18–19 ¶¶ 53–56.) However, § 56-15-10 only contains definitions for the underlying statutory scheme. *See* S.C. Code Ann. §§ 56-15-10(a) to (w) (West 2019). Instead, Meyer consistently quotes and refers to S.C. Code Ann. § 56-15-45, which makes it unlawful for a manufacturer to own a motor vehicle dealership or provide motor vehicle repairs, without directly citing to it. (*Compare* ECF No. 1 at 10–11 ¶ 29, *with* S.C. Code Ann. §§ 56-15-45(A) to (B).) In other words, Meyer consistently quotes the latter while citing to the former. (*Compare* ECF No. 1 at 10–11 ¶ 29, *with* S.C. Code Ann. §§ 56-15-45(A) to (B).)

> franchisor to own a facility that engages primarily in the repair of motor vehicles, except motors homes, if the repairs are performed pursuant to the terms of a franchise or other agreement or the repairs are performed as part of a manufacturer's or franchisor's warranty.

S.C. Code Ann. § 56-15-45(C) (West 2019). Despite the enactment of the aforementioned statutory provisions in 2000,[4] Meyer suggests that, together, they comprise "the Anti-Tesla bill" because they "create[] a monopoly in favor of franchised dealers and benefits them by blocking Tesla from operating within [South Carolina]." (ECF No. 1 at 10–11 ¶ 29.) Meyer alleges that these provisions are "protectionist legislation" and "act[] as an outright ban on Tesla's direct-to-consumer sales model, effectively giving franchised dealers a state-sponsored monopoly on car sales within South Carolina." (*Id.* at 3 ¶ 5.) Put concisely, Meyer submits that the laws of South Carolina "ban[] Tesla's sales and distribution model . . . ." (*Id.* at 3 ¶ 5.) For these reasons, Meyer maintains that S.C. Code § 56-15-45 is unconstitutional, and he and Tesla are harmed by Defendants' enforcement of the statute. (*Id.* at 15–16 ¶¶ 40–42.)

Within his Complaint, Meyer makes a number of notable statements and assertions. (*Id.* at 5–19 ¶¶ 14–57.) For example, Meyer begins a sentence as follows: "Tesla asks the [c]ourt . . . ." (*Id.* at 5 ¶ 9.) Notwithstanding the absence of Tesla to the present action, Meyer later declares that his "mission is to both improve his access to Tesla dealerships and maintenance facilities and to accelerate the world's transition to electric mobility by bringing to market a full fleet of increasingly affordable electric vehicles." (*Id.* at 5–6 ¶ 14.) He vigorously contends "[t]here is no reason to bar Tesla from establishing facilities in the [s]tate to service and repair South Carolina

---

[4] According to the pertinent legislative history, S.C. Code Ann. § 56-15-45 was formally passed by the South Carolina General Assembly in 2000. Act of May 17, 2000, No. 287, 2000 S.C. Acts 2041. This was approximately three (3) years before the founding of Tesla. *See About Tesla*, TESLA, https://www.tesla.com/about (last visited May 26, 2019) ("Tesla was founded in 2003 . . . .").

4

resident[s'] Tesla vehicles, nor to subject South Carolina's Tesla owners to substantial inconvenience—and require them to overcome senseless hurdles—simply to obtain needed repairs and service." (*Id.* at 14 ¶ 37.) In numerous sections of his Complaint, Meyer alleges that "[he] and Tesla are injured irreparably by the past, present, and future violations of the Due Process, Equal Protection, and Commerce Clauses of the [United States] Constitution." (*Id.* at 16 ¶ 42.) In seeking relief for each respective claim, the Complaint states "[Meyer] and Tesla will continue to suffer great and irreparable harm." (*Id.* at 17 ¶ 46, 18 ¶ 50, 19 ¶ 57.) Essentially, Meyer desires state officials to cease the enforcement of S.C. Code § 56-15-45 "against Tesla and other similar auto manufacturers." (*Id.* at 1.)

On March 28, 2019, Defendants filed their Motion to Dismiss to Meyer's Complaint. (ECF No. 15.) Defendants argue the following in their Motion to Dismiss: (1) Meyer lacks constitutional standing to challenge S.C. Code § 56-15-45 under Article III of the United States Constitution; (2) S.C. Code § 56-15-45 is constitutional under the United States Constitution; and (3) the Governor of South Carolina lacks responsibility to enforce S.C. Code § 56-15-45. (ECF No. 15-1 at 5–10.) First, as it specifically relates to constitutional standing, Defendants assert that Meyer "fails to allege any more than generalized grievances about South Carolina law," and his "allegations are merely about matters of convenience, and inconvenience does not establish standing." (*Id.* at 7.) In other words, according to Defendants, Meyer has not alleged a "harm sufficient to establish standing" and cannot bring a suit on behalf of a third-party.[5] (*Id.* at 8.) Secondly, Defendants

---

[5] Here, Defendants have only made challenges to Meyer's constitutional standing under Article III of the United States Constitution. (ECF No. 15-1 at 7–8.) However, Defendants have not argued anything regarding Meyer's third-party standing (ECF No. 15-1 at 7–8), sometimes referred to as prudential standing, which concerns whether a party may assert the legal rights of another. *See Kowalski v. Tesmer*, 543 U.S. 125 128–30 (2004). *See also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013).

5

submit that South Carolina's statute is constitutional because other courts have determined that similar statutes did not violate provisions of the United States Constitution. (*Id.* at 8–10 (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493 (5th Cir. 2001); *Tesla Motors UT, Inc. v. Utah Tax Comm'n*, 398 P.3d 55 (Utah 2017)).) Lastly, Defendants maintain that "the Governor does not have supervisory authority over every state agency, and [Meyer] does not name or specify an agency as to which the Governor would have authority regarding this matter." (*Id.* at 10.) For these reasons, Defendants request the dismissal of Meyer's Complaint (ECF No. 1). (*Id.*)

On April 11, 2019, Meyer responded in opposition to Defendants' Motion. (ECF No. 16.) Concerning Article III standing, Meyer argues that he has suffered an injury because "[h]e had to shop for, test drive, and pick up each of the vehicles from Charlotte, North Carolina[,]" and "has had to take his vehicles or have his vehicles towed to North Carolina every time they have needed service." (*Id.* at 3.) Put differently, as opposed to being subject to a "mere inconvenience," Meyer believes that he experiences "present and future harm to his finances" for having to drive, or transport his vehicles, to Charlotte, North Carolina. (*Id.* at 4.) Additionally, considering whether this court can provide redressability for his injuries, Meyer submits that "[a] lift on the restriction of Tesla operations in the state *would guarantee* they would open dealerships and service locations." (*Id.* at 3 (emphasis added).) To support this proposition, Meyer cites to an organization and website that is not associated with Tesla. (*Id.* (citing TMC Staff, *Tesla Direct Sales Map (US)*, TESLA MOTORS CLUB: TESLA FORUM (Jan. 11, 2018), https://teslamotorsclub.com/tmc/threads/tesla-direct-sales-map-us.106111/).) Meyer also contends that South Carolina's dealership statute is unconstitutional, and the Governor of South Carolina is a proper party to the action because he has the "ultimate authority over enforcing all state laws" and "veto power." (*Id.* at 9.)

6

On April 17, 2019, Defendants replied to Meyer's Response. (ECF No. 18.) Defendants maintain that Meyer's pleading "attempts to prop up the[] inadequate allegations" of his Complaint, and his Complaint must meet the applicable pleading requirements. (*Id.* at 2.) Building upon their Motion to Dismiss, Defendants further emphasized that Meyer's Complaint "fails to meet the 'traceability' and 'redressability' elements of standing." (*Id.* at 3 (citations omitted).) Importantly, Defendants point out that "Tesla is not a party to this suit." (*Id.* at 4.) Moreover, Defendants continue to advocate for the constitutionality of S.C. Code § 56-15-45(C) (West 2019) and stress that the Governor of South Carolina has no "general enforcement authority" regarding the statute at issue. (*Id.* at 4–7.)

The court entertained arguments from the parties on May 30, 2019. (ECF No. 23.) During the hearing, Defendants continued to emphasize that Meyer lacks constitutional standing to bring the suit, identified a number of issues with the Complaint, and emphasized that the Governor is not a proper party to the action. In response, Meyer argued that he possesses constitutional standing, has sufficiently alleged constitutional violations of Defendants, and the Governor is the appropriate party to the action because he enforces the law. Meyer also apprised the court of state legislation that would permit Tesla to open a location within South Carolina. As of this date, there have been no further motions or responses from the parties. Therefore, this matter is ripe for judicial review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully briefed the issues, and this matter is ripe for consideration.").

## II. LEGAL STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontroversies." U.S. CONST. art. III, § 2, cl. 1. *See also Flast v. Cohen*, 392 U.S. 83, 94 (1968) ("The jurisdiction of federal courts is defined and limited by Article III of the

Constitution."). The United States Supreme Court, on countless occasions, has stressed that "[t]he concept of standing is part of this limitation." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) ("The doctrine of standing gives meaning to these constitutional limits by identify[ing] those disputes which are appropriately resolved through the judicial process." (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). The concept of standing ensures that a party possesses "the requisite stake in the outcome of a case 'at the outset of the litigation.'" *Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)).

In order to establish Article III standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Defs. of Wildlife*, 504 U.S. at 560–61). First, an injury in fact is established when a plaintiff shows that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Defs. of Wildlife*, 504 U.S. at 560). Second, "[t]raceability is established if it is 'likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)). Lastly, to satisfy redressability, "a plaintiff 'must show that "it is likely, as opposed to merely speculative that the injury will be redressed by a favorable decision."'" *Deal*, 911 F.3d at 189 (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)).

"Standing implicates the court's subject-matter jurisdiction and may be challenged in a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Heindel v. Andino*, 359 F. Supp. 3d 341, 351 (D.S.C. 2019) (citing *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017); *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715 (4th Cir. 2015)). "The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 215 (1990)). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22 (1969)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defs. of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "Nevertheless, the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). "When a defendant raises standing as the basis for a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, . . . the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Trail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). A federal district court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990)

(citing *Warth*, 422 U.S. at 508).

### III. DISCUSSION

A. **Meyer's Alleged Injury in Fact**

In order to show Article III standing, a plaintiff is always required to show an injury in fact. *See Spokeo, Inc.*, 136 S. Ct. at 1547 ("This case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998))). "The injury-in-fact requirement ensures that plaintiffs have a 'personal stake in the outcome of the controversy.'" *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (quoting *Warth*, 422 U.S. at 498). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560). When a plaintiff seeks declaratory and injunctive relief, he or she "must establish an ongoing or future injury in fact." *Kenny*, 885 F.3d at 287–88 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). "The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000) (citing *Defs. of Wildlife*, 504 U.S. at 575). *See also Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) ("But a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has 'a personal stake in the outcome' distinct from a 'generally available grievance about government.'" (internal citations omitted)); *Sharpe v. Mental Health Sys. of the U.S.*, 357 F. App'x 373, 374 (2d Cir. 2009) ("Standing cannot be 'predicated on . . . generalized grievances about the conduct of government.'" (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982))).

10

Unfortunately, Meyer's Complaint does not sufficiently allege an injury in fact. (*See* ECF No. 1.) Seeming to speak on behalf of Tesla, Meyer's Complaint alleges that South Carolina's statute "creates a monopoly in favor of franchised dealers with respect to selling and servicing new cars, and it excludes Tesla from the South Carolina market because Tesla does not, and could not, use the dealer model." (*Id.* at 13 ¶ 34.) At best, as it relates to his own injury, Meyer complains that South Carolina's statute subjects the state's "Tesla owners to substantial inconvenience—and require[s] them to overcome senseless hurdles—simply to obtain needed repairs and service." (*Id.* at 14 ¶ 37.) Meyer builds upon his dissatisfaction by declaring that the statute effectively requires "Tesla owners to drive longer and travel farther precisely when their cars are in need of repair." (*Id.*) Besides these issues, Meyer does not allege any additional injuries within his Complaint. (*See id.* at 1–21.)

The United States Supreme Court recently reiterated that an injury in fact must be "distinct from a 'generally available grievance about government.'" *Gill*, 138 S. Ct. at 1923 (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam)). A "generalized grievance" is insufficient to show the particularity component of constitutional standing. *See Sweigert v. Perez*, 334 F. Supp. 3d 36, 42 (D.D.C. 2018). Here, Meyer explicitly declares that he "brings this lawsuit to vindicate his rights under the United States Constitution *to be able to purchase and have serviced the critically-acclaimed, all-electric vehicles that Tesla and other automobile manufacturers who do not have franchisees or independent dealerships in . . . South Carolina.*" (ECF No. 1 at 1 (emphasis added).) He specifically states that South Carolina's statute "thwarts competition, increases prices, and deprives consumers of products that they want." (*Id.* at 16 ¶ 45.) Taking Meyer's allegations as true, because there is not a Tesla store and service center located within South Carolina, every South Carolina citizen—not just Meyer—must drive to another state in order to purchase an

11

electric vehicle or have their electric vehicle serviced. (*See* ECF No. 1.) Therefore, every South Carolina citizen could essentially bring this "generally available grievance" about South Carolina's dealership law since it allegedly causes them to travel for vehicle maintenance and purchases. *See Gill*, 138 S. Ct. at 1923. *See also Becker v. Fed. Election Comm'n*, 230 F.3d 381, 389 (1st Cir. 2000) ("[T]he harm done to the general public by corruption of the political process is not a sufficiently concrete, personalized injury to establish standing."). Meyer's expansive allegations make his alleged injuries insufficiently concrete and particularized because South Carolina residents may share his concerns *See Friends of the Earth, Inc.*, 204 F.3d at 156 ("The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public." (citing *Defs. of Wildlife*, 504 U.S. at 575)). Accordingly, Meyer has failed to establish an injury in fact and lacks Article III standing on this basis alone because he brings nothing more than a "generalized grievance" about his access to Tesla.[6] *See Gill*, 138 S. Ct. at 1923.

---

[6] The court is aware that previous actions have been brought in Massachusetts, Missouri, New York, and Utah state courts regarding Tesla's ability to obtain a license to sell motor vehicles. In Massachusetts, Missouri, and New York, automobile dealers associations brought suit to prevent Tesla from operating dealerships within their respective states. *See Mass. State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc.*, 15 N.E.3d 1152, 159 (Mass. 2014); *State ex rel. Mo. Auto. Dealers Ass'n v. Mo. Dep't of Revenue*, 541 S.W.3d 585, 589–93 (Mo. Ct. App. 2017); *Greater N.Y. Auto. Dealers Ass'n v. Dep't of Motor Vehicles*, 969 N.Y.S.2d 721, 726, 727 (N.Y. Sup. Ct. 2013). In all three states, the dealers' suits were dismissed for lack of standing pursuant to state law. *See Mass. State Auto. Dealers Ass'n, Inc.*, 15 N.E.3d at 159 (holding that motor vehicle dealers and their trade association did not have standing under state law to bring a claim that they would be disadvantaged by competing with Tesla's company-owned stores because that type of competitive injury, between unaffiliated entities, was not within the area of concern of the statute regulating business practices between franchisors and franchisees); *State ex rel. Mo. Auto. Dealers Ass'n*, 541 S.W.3d at 589–93 (holding that motor vehicle dealers and their trade association did not have standing under state law to bring a claim concerning the Missouri Department of Revenue's ("Department") decision to grant and renew Tesla's dealership licenses because legislation was not intended to protect parties from economic competitors who were allegedly granted licenses, Plaintiffs failed to demonstrate that the Department's actions impacted the direct expenditure of public funds in a sufficient nature to establish taxpayer standing, and the Plaintiff's

## B. The Traceability of an Injury to Defendants

Even if Meyer has suffered an injury in fact, constitutional standing further requires "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Defs. of Wildlife*, 504 U.S. at 560–61 (quoting *Simon*, 426 U.S. at 41–42). A party does not satisfy the traceability requirement when they "can only speculate" about whether a party will pursue a certain action in a specific way. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013). "The 'fairly traceable' requirement ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc.*, 204 F.3d at 161 (citing *Defs. of Wildlife*, 504 U.S. at 560). A plaintiff must merely show that "a particular defendant's [actions] has affected or has the potential to affect his interests." *Id.* (citations omitted). Traceability is a lower standard than proximate cause because "the plaintiff must 'demonstrate a causal nexus between the defendant's conduct and the injury.'" *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (quoting *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992)). With those principles in mind, the United States Court of Appeals for the Fourth Circuit has declared that "[a]n injury sufficient to meet the causation . . . element[] of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the [c]ourt's control." *Mirant Potomac River, LLC v. U.S. Envtl. Prot. Agency*, 577

---

challenge was to the Department's discretionary duty, and thus did not establish a ministerial standing); *Greater N.Y. Auto. Dealers Ass'n*, 969 N.Y.S.2d at 726, 727 (holding that an automobile dealers association lacked standing under state law to bring suit challenging the issuance of dealer registrations to Tesla under the Franchised Dealer Act ("Act") because there was no franchise relationship between the parties and because manufacturers and dealers cannot use the Act as a means to sue their competitors). In Utah, an action was brought by Tesla Motors UT, Inc., as a wholly-owned subsidiary of Tesla, Inc. and as the party denied a license to sell new motor vehicles, thus, standing was not addressed by the court. *See Tesla Motors UT, Inc. v. Utah Tax Comm'n*, 398 P.3d 55, 58 (Utah 2017).

13

F.3d 223, 226 (4th Cir. 2009) (citing *Frank Krasner Enters. Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234–35 (4th Cir. 2005)).

In challenging South Carolina's dealership law, Meyer contends that South Carolina's statute is the reason that Tesla declines to open a dealership within South Carolina. (*See* ECF No. 1 at 15–16 ¶¶ 40–42.) However, because Tesla is a third party absent from this case, Meyer has made the traceability prong "problematic." *See Doe*, 713 F.3d at 755. While South Carolina's statute may create barriers for Tesla, ultimately, it is Tesla that has made the decision to not open a location within South Carolina *when it is not completely foreclosed from doing so under the statute*. *See* S.C. Code § 56-15-45(D). Indeed, South Carolina's law provides a provision in which a manufacturer, including Tesla, may utilize a franchisee to sell its vehicles. *See id.* Tesla, not Defendants, has made the business decision to not open a South Carolina location and operate pursuant to S.C. Code § 56-15-45, thereby making it the true trace of Meyer's alleged injury. Thus, this is a situation in which "the actions of a third party beyond the [c]ourt's control" have impacted Meyer, and traceability is not satisfied. *See Mirant Potomac River, LLC*, 577 F.3d at 226.

In *Doe v. Virginia Dep't of State Police*, the United States Court of Appeals for the Fourth Circuit reiterated that "[a] plaintiff faces a related obstacle to establishing traceability and redressability when there exists an unchallenged, independent rule, policy, or decision that would prevent relief even if the court were to render a favorable decision." 713 F.3d at 756. In that case, a plaintiff was allegedly precluded from entering the school of her children and church of her faith, however, the court reasoned that because plaintiff did not "petition a [state] circuit court, the [school] [b]oard, or any church, [it had] no way of knowing whether she will ultimately be unable to enter her children's school or a church of her faith . . . ." *Id.* at 756. The court also arrived at this conclusion because the statute at issue "allow[ed] for third parties to grant her permission to enter

14

the[] properties . . . ." *Id.* Here, too, there is no indication that Meyer has directly challenged Tesla's business decision to not enter South Carolina or its attempts to comply with South Carolina's dealership statute. (*See* ECF No. 1.) Similar to the issues that did not establish traceability in *Doe*, Meyer has "no way of knowing" whether Tesla is the entity deciding not to enter South Carolina, and he cannot establish traceability because South Carolina's statute affirmatively allows manufacturers, including Tesla, to utilize a method for opening a dealership within South Carolina. *See* S.C. Code § 56-15-45(D) (West 2019). *See also Doe*, 713 F.3d at 756 ("[B]ecause the statute allows for third parties to grant her permission to enter these properties, she cannot demonstrate traceability or redressability."). For these reasons, Meyer fails to satisfy the traceability requirement of the constitutional standing inquiry. *Defs. of Wildlife*, 504 U.S. at 560–61 (quoting *Simon*, 426 U.S. at 41–42).

## C. **Meyer's Redressability from a Favorable Decision**

Article III's standing inquiry does not end at injury in fact or traceability, a federal court must also examine whether it can provide redressability.[7] *See Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Defs. of Wildlife*, 504 U.S. at 560–61). "To satisfy the redressability element of standing, a plaintiff 'must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."'" *Deal*, 911 F.3d at 189 (quoting *Sierra Club*, 899 F.3d at 284). Redressability's burden "is not onerous." *Id.* "The redressability requirement ensures that a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Friends of the Earth, Inc.*, 204 F.3d at 162 (quoting *Warth*, 422 U.S. at 508). When a declaratory judgment is

---

[7] A federal court is not always required to address all of constitutional standing's elements if one is lacking, however, in this particular instance, the court will address redressability. *See generally Heindel v. Andino*, 359 F. Supp. 3d 341, 359 (D.S.C. 2019); *Stinnie v. Holcomb*, 355 F. Supp. 3d 514, 524 (W.D. Va. 2018); *Lee v. Va. State Bd. of Elections*, 155 F. Supp. 3d 572, 577 (E.D. Va. 2015).

15

involved for purposes of standing, litigants "must identify some further concrete relief that will likely result from the declaratory judgment." *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor*, 995 F.2d 510, 513 (4th Cir. 1993). Moreover, when a favorable judicial decision "depends on the unfettered choices made by independent actors not before the court[]," redressability cannot exist. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). *See also Doe*, 713 F.3d at 755 ("The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured."). In essence, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Citizens for a Better Env't*, 523 U.S. at 107. "Still, 'no explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiff's standing.'" *Doe*, 713 F.3d at 755 (quoting *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 100 (4th Cir. 2011)).

At this stage of the proceedings, the court must accept all of Meyer's factual allegations as true and construe the Complaint in his favor. *See Warth*, 422 U.S. at 501. Meyer's Complaint specifically requests the court to issue a judgment declaring that "Tesla and similarly situated vehicle manufacturers" are entitled to a dealer's license and a permanent injunction ordering Defendants to grant "Tesla and similarly situated vehicle manufactures" a dealer's license. (ECF No. 1 at 19–21.) However, nowhere within his Complaint does Meyer allege or suggest that Tesla would open dealerships in South Carolina if this court were to invalidate South Carolina's dealership statute and order Defendants to provide Tesla with a dealer's license.[8] (*See id.* at 1–21.)

---

[8] In his Response in Opposition to Meyer's Motion to Dismiss, Meyer submits that "[a] lift on the restriction of Tesla operations in the state *would guarantee* they would open dealerships and service locations." (ECF No. 16 at 4 (emphasis added).)" However, Meyer's responsive pleading cannot be used to curtail deficiencies within his Complaint as it relates to constitutional standing. *See Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017).

16

Even more problematically, Meyer does not indicate that he can provide any direct insight into the business decisions of Tesla as it relates to the laws of South Carolina. (*See id.*) Thus, Meyer's implicit belief that Tesla would move to South Carolina if the statute is invalidated is "merely speculative," as opposed to being "likely," because there is no allegation within the Complaint that Tesla would take the step that Meyer desires it to take. *Deal*, 911 F.3d at 189 (quoting *Sierra Club*, 899 F.3d at 284).

Additionally, were the court to declare South Carolina's dealership law unconstitutional, a favorable judicial decision to Meyer would depend upon "the unfettered choices made by independent actors not before the court[]," which forecloses the possibility of redressability by a favorable decision from the court. *ASARCO Inc.*, 490 U.S. at 615. In *ASARCO, Inc. v. Kadish*, the Arizona Education Association, an organization representing twenty thousand (20,000) public schoolteachers, participated in a lawsuit challenging a state statute governing mineral leases on state lands. 490 U.S. at 610. There, directly similar to Meyer's contentions, the educational organization maintained that "the state law 'impose[d] an adverse economic impact' on them." *Id.* at 614. As it specifically related to whether a federal court could provide them with relief, the United States Supreme Court reasoned that the organization's redress rested upon "hypothetical assumptions." *Id.* Specifically, the Court determined that the invalidation of Arizona's state law did not necessarily mean that an increase in revenue to public schools would increase benefits and salaries of teachers. *Id.* As Justice Kennedy stated: "These policy decisions might be made in different ways by the governing officials, depending on their perceptions of wise state fiscal policy and myriad other circumstances." *Id.* at 614–15. The Court had "much less confidence in concluding that relief is likely to follow from a favorable decision" when that favorable decision "depends on the unfettered choices made by independent actors not before the courts and whose

17

exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* at 615. Put differently, it was "too uncertain" for the Court to gauge the "probable response of private individuals." *Id.*

Taking all of the Complaint's allegations as true and construing the Complaint in favor of Meyer, Meyer takes issue with driving to Charlotte, North Carolina, in order to have his electric vehicles serviced. (ECF No. 16 at 3–4.) However, as emphasized above, even if South Carolina's statute was deemed unconstitutional by the court, the Complaint provides no indication that Tesla would open a service store in South Carolina. (*See* ECF No. 1.) Moreover, there is no suggestion that Tesla would apply for a dealership license to operate within South Carolina. (*See id.*) This is so because Tesla is an "independent actor[] not before the court[] and whose exercise of broad and legitimate discretion [this] court[] cannot presume either to control or to predict." *ASARCO Inc.*, 490 U.S. at 615. Indeed, it is "too uncertain" that a favorable decision from the court would provide Meyer with relief because the decision itself would depend upon the "hypothetical assumption[]" of Tesla making the private, business decision to move to South Carolina, complying with all of the valid laws of South Carolina, and moving to a South Carolina location that is closer to Meyer in comparison to Charlotte, North Carolina. *ASARCO Inc.*, 490 U.S. at 615–16. *See also Defs. of Wildlife*, 504 U.S. at 568–71 (finding no redressability when other federal agencies would have to act in order to remedy a plaintiff's purported injury). For the court, this is a stretch too far. Were the court to accept Meyer's theory of redressability, it would undermine the separation-of-powers principles underlying constitutional standing. *See Clapper*, 568 U.S. at 408 ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." (citations omitted)). Accordingly, even if Meyer had established traceability and an injury in fact, Meyer's Complaint

fails to show redressability for purposes of Article III standing and that he "personally would benefit in a tangible way from the court's intervention." *Friends of the Earth, Inc.*, 204 F.3d at 162 (quoting *Warth*, 422 U.S. at 508).

For the reasons stated above, Meyer lacks constitutional standing to bring the instant suit because he has not shown an injury in fact, traceability, or redressability, the required elements to confer constitutional standing. Mindful of the jurisdictional limitations imposed upon the court by the United States Constitution, the court is compelled to grant Defendant's Motion (ECF No. 15) and dismiss Meyer's Complaint (ECF No. 1) because Meyer lacks Article III standing to adjudicate this dispute.[9]

## IV. CONCLUSION

After careful consideration of Defendants' Motion, Meyer's Response, and the parties' arguments at the hearing, the court **GRANTS** Defendant's Motion to Dismiss Complaint (ECF No. 15). Accordingly, the court **DISMISSES WITHOUT PREJUDICE** Meyer's Complaint (ECF No. 1).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

June 6, 2019
Columbia, South Carolina

---

[9] Because Meyer lacks constitutional standing to bring the instant suit, the court need not address Defendants' arguments concerning whether S.C. Code § 56-15-45 is constitutional and whether the Governor of South Carolina is an appropriate party to the action (ECF No. 15-1 at 8–10). *See Sexton v. Medicare*, 194 F. Supp. 3d 209, 215 (E.D.N.Y. 2016) ("Because the court lacks subject matter jurisdiction to hear plaintiff's claim against defendant, the court need not address defendant's alternative arguments.").

19